Good morning, your honors. May it please the court, for brevity purposes, although the brief addresses more than two issues, I'm going to focus on two. The first deals with the award of attorney's fees under Federal Rule 54B. The Supreme Court, the U.S. Supreme Court, has instructed us that unless the rule is ambiguous, it's to be followed as written. In order for Judge Phillips' award of attorney's fees to be sustained on appeal, this Court is going to have to find that the rule is ambiguous. Because the rule does not provide for an implied exception for post-trial motions. When the 14-day requirement was added in 1993, no exception for post-trial motions was added, and the Committee's notes at the time of that amendment do not discuss any implied exception for the filing of post-trial motions. Since it is clear that in this case the judgment was entered on July 2 of 2003, and the motion for attorney's fees was not filed until August 13th of 2003, the motion was untimely and cannot be sustained on appeal. Now, I assume you made that argument to the district court? We did. And the district court said? It followed a case out of the First Circuit, and it followed a case out of the Eleventh Circuit, and it followed a trial court opinion out of the Central District of California. And held what? It held that there was an implied exception in the rule for the delay in filing the motion until after post-trial motions had been heard and ruled upon, which is precisely what the Supreme Court says you cannot do unless you find that the rule is ambiguous. Judge Phillips did not find Rule 54b to be ambiguous. She simply found there was an implied exception, which I don't think the Supreme Court permits. In fact, the Supreme Court has indicated that if you don't agree with what the rule says, the trial court's job is not to rewrite the rule, but to leave it up to others to deal with it. You're simply supposed to follow the rule as it's written. She did not, and I don't think the award can be sustained on appeal. The second issue is whether the respondent in this case can, in effect, obtain a double recovery. The court allowed over-objection, the case to go to the jury on both a 1983 excessive force standard and on a California common law negligence standard. Well, I don't see that your position ever was that that's not possible. You could have both. I mean, you look at the instructions in the special verdict, and you didn't seem to object to the idea that there could be a recovery for excessive force and for negligence. Quite the contrary. Did you object to the special verdict? I objected to the court allowing the jury to be instructed on negligence at all. I made a Rule 50 motion. On the ground that there wasn't any. That's correct. Because there's no evidence of any negligent conduct. In order for there to be a recovery under California common law negligence theory, there would have to be evidence that would indicate there was some conduct that would have been a failure to act appropriately that would not also constitute the use of excessive force. Because the California state law on battery by a peace officer and the section 1983 standard for excessive force by a peace officer are the same. Both the Ninth Circuit, the California Supreme Court and all the appellate. How about unintentionally dragging the guy through the door and banging his head on the frame? The allegation was made. There was no proof of it. The plaintiff couldn't establish it. The witness who purportedly said it admitted he didn't see any striking of the head on the door. He didn't see any contact with the door. The two deputies denied it. The allegation was made, but there's no proof of it and certainly no substantial evidence of it. The respondent testified he doesn't remember going through the door. Well, he obviously went through the door. True. The deputies indicated he went through the door by contacting his shoulder. There was no evidence that even if his head struck the door, that it produced any injury, much less an injury that would justify the amount of emotional distress damages that were awarded for that particular act. The acts the plaintiffs that Dr. Bailey indicated potentially could have formed the basis of a negligence award either did not happen, or there's no evidence that it happened, or did not involve deputies Colbert and Taberzio, or would either be privileged under Federal and State law as the use of reasonable force, or would not be privileged under State or Federal law and thus would be involved in the excessive force claim for which this jury rendered a verdict. Well, at what point, what I don't understand is at what point did, are you contending that the case went to the jury on the basis of instructions that were unsupported by the evidence or wrong instructions? No, the instructions, if there's evidence to support the instructions, the instructions are fine. The court provided the jury with model instruction 11.4 with respect to excessive force. It also instructed the jury on basic California negligence law. Neither instruction was incorrect. However, under the facts, there's no evidence to support the giving of a negligence instruction because there was no evidence that the deputies did anything negligently. At what point did you argue that the negligence instruction shouldn't have been given? When the court held the instruction conference and the court indicated it was intending to give negligence instructions. So the court must have concluded there was enough evidence to get to the jury on negligence. The other side, what did the other side identify as the negligent conduct and the resulting injuries? In the brief, in, in, in Respondent's brief, they argued five distinct acts. The problem is, if you look very carefully at those acts, the act of handcuffing is not an act that Deputy Colbert or Deputy Tavirzio was involved in. The, the Respondent doesn't know who handcuffed him. And other deputies testified that they were the ones who actually handcuffed him. That's a very good argument to make to the jury. In point of fact, it should never have been an argument to have been made to the jury.  I did not discuss negligence because I didn't believe there was any. And if you look at the final argument. I just want to make sure I under heard what you said. When you finally got your opportunity to talk to the jury, you didn't discuss negligence? No. Because we never took the position there was negligent. You never even said there was no negligence? I argued it to the court. But not to the jury. If you look at counsels. And that's when you got slammed. No. If you look at counsels of Respondent's final argument. Negligence is not an issue that was really addressed in final argument. The jury came up with $220,000 worth. Yes, but they came up with it in a very peculiar way. If you look at how they assess damages. They awarded economic damages on the federal civil rights claim only. There were no non-economic damages. Yeah, you know where the $79,000 came from. I know. I understand where the $19,000 component of it came from. And the $60,000. Plaintiff's counsel asked for it. There was no proof of it, but he asked for it. That's where it came from. $60,000, $19,000, that's where I figure it came from. That's true. But I still, in scouring the record and having lived with that verdict for almost two years, I still don't understand where the $600 component of the economic damage award comes in on the negligence claim, much less how the conduct that has never been explained to be negligent could now support an award of almost $175,000. So you're making two arguments. First of all, there was no insufficient evidence of negligence for that theory to have gone to the jury in the first place. And secondly, if it did, it was double recovery. That's correct. Well, question five clearly segregates out civil rights violation. And then question 12b says, in addition to any damages you awarded to question number five, so it seems that the special verdict separates the two and says five involves civil rights and then negligence involves 12b. So that would seem to eliminate double recovery. If in fact there's evidence to support it. So it goes back to your first position, no evidence of negligence period. Right. When Judge Phillips indicated she was going to instruct the jury on negligence and was in fact going to craft a verdict form that included a negligence question because of my concern that I would face the exact argument I'm having to deal with now that there would be double recovery, there was the necessity to try and segregate out which was which. Right. Five and 12. That's correct. I couldn't at that moment in time just simply lay back and have it all lumped in. It was always my position, and I argued to Judge Phillips as part of my Rule 50 motion, that whatever my clients did, they did it intentionally during the detention and subsequent attempt to arrest Dr. Bailey. It was not negligently done. The wrist lock that they that is the first item, one, there's no evidence that it caused the plaintiff any damage, and number two, you don't negligently apply a wrist lock to anyone. Going through the door, I think there's no substantial evidence that any damage was caused to the plaintiff in that context. They also talk about the various kicks and contact during the physical struggle outside. Again, if that conduct occurred, it occurred during the attempt to arrest the respondent. He's either privileged under state and federal law because it was reasonable force or it's not, at which point in time it's excessive force and it triggers federal law. So you put all your eggs in that basket, and it's now before us. So really what you're saying is that there's – is this a question of – this is a question as to whether or not there was any evidence. Is that fundamentally the – In part. Are you suggesting that there's a legal question here, too? No, I'm also suggesting there's a legal question. And the legal question is if the California state law standard and the federal standard on excessive force are essentially the same, and I believe that they are, whether the force was objectively reasonable under the circumstances, how can you dovetail in a negligence claim unless that – and not have it be double recovery – unless you have some demonstrable evidence of other conduct that would not violate state and federal law with respect to the use of force. You would have to have some conduct that would not violate the state and federal standard but yet be negligent and the cause of harm to the plaintiff. So I think – I can't envision under the facts of this case and certainly with the five claims that the plaintiff makes claims support a negligence recovery. Well, isn't the theory that there was intentional conduct that violated the civil rights and that it was part of a course of – you know, course of an episode where there was also some negligence, too, that – I understand that – I understand that Judge Phillips may have viewed the evidence that way. Yeah. But when you look at the record, there's nothing that supports it. Because when you ask Respondent to explain what those items of negligence were, they set them forth in their brief. There are five. And when you look carefully at the record, several of them are either totally unsupported by the record or didn't happen that involved my clients or are intentionally negligent. So I don't think there was intentional conduct, and again, without any proof that those items even occurring. But you didn't argue that to the jury? No. Okay. I think we understand your position. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. I'm William S. Halsey, attorney for the appellee. The appellant's premise is a false premise, a strawman device. They state it's the same exact use of force. They keep repeating this mantra. This was a string of completely incompetent police conduct. Taking a cite and release matter and turning it into an act of violence, applying wrist locks for no reason, failure to pat down my client, contending, and having not done so, contending that his hands and his waist were a threat to them, never inquiring as to who he was. Then this applying a wrist lock and running him through a heavy door. Yeah, but nobody said he hit his head on the door. That's not true, Your Honor. He doesn't remember it. He doesn't remember. This can be established circumstantially. What Mr. White said at Reporter's Transcript 569, line 1, and all of these quotes are from page 569, pushed face first through the door. The door, quote, flew open. That's line 16. Sounded like somebody, quote, hitting the door real hard and it flying open, close quotes. That's lines 23, 24.  Door described, quote, I'm going to get to that, Your Honor. Door described, quote, very heavy, so heavy that I've had to replace the hinges on the top of the door. Two different doors while I worked there because it keeps pulling it out of the door jamb, close quotes. That's pages, lines 17 through 19 on page 564. Plus, we have the fact that Dr. Bailey received a subarachnoid hemorrhage to the back of his head. Plus, Dr. Bailey testified that when the wrist lock was applied, he went up on his toes because of the pain experienced. Plus, the fact that he doesn't recall hitting the door, going through the door, and that's consistent because that's amnesia caused by the blow. All of those things directly and circumstantially establish that he hit his head. He was so lifted up and bent over from the pain that he was pushed through that door and he hit that door on that. While I didn't establish that it was 200 pounds, it's an extremely heavy door. Can I ask a question? Yes, you can. There was a settlement conference call or something in this case with our conference attorneys? The docket seems to indicate that. We did discuss, we had a preliminary discussion with a representative from your court, and eventually it was determined that because of the positions of the parties that it wouldn't settle. And now it's been suggested here, all intendants are to support the judgment. This is really, in light of the injuries sustained, a very modest recovery, considering we have a subarachnoid hemorrhage, which is a life-threatening condition, an orbitable blowout fracture of the right eye, a permanent condition of dilopia, double vision in the upper right-hand quadrant, carpal tunnel operation, a subluxated thumb, post-traumatic stress disorder diagnosed by a psychiatrist, and the undisputed evidence of termination of a relationship at the Moreno Valley Hospital. This is very modest recovery in light of those serious injuries. And there were obviously intentional acts of violence, and there were obviously negligent, such negligent acts. Now, it has been suggested that the punch to Dr. Haley, Dr. Bailey's head by Deputy Trobrizio, that it was an intentional act. His testimony at Reporter's Transcript, page 58. His testimony. His, his, his. His, Trobrizio. Trobrizio. Yes, Trobrizio being examined by me as a first witness. Reporter's Transcript, 58, line 23. He describes his punch of Dr. Bailey in the right eye, which is the serious permanent injury, as it was a reaction. In other words, he didn't intend, he said he was bitten. He negligently applied the carotid restraint, ended up getting his arm in Dr. Bailey's mouth, then perceived he was being bitten, and then as a reaction he said, I characterize it as reflexive in my grief, but when I was challenged in the final appellant's closing grief that there was no evidence of this, I went back because I remembered it. And there it is. It was a reaction. That was the testimony of Trobrizio. Like it wasn't intentional, it was reactive, and that would be he acted negligently. He hit Dr. Bailey so hard in the eye that it blew out the internal structure in the, of the skull and has caused a permanent injury. That's what the jury saw, is that, and that's why they didn't, in some cases they didn't get us into a punitive damages situation. They bought what the officers said, that they didn't intend to strike him. And I want to say that Mr. Diesenhaus didn't argue negligence, but he wanted to have his cake and eat it too. He said, we don't think anything here was negligent, but if you find that it was, be sure that you assess the conduct against Dr. Bailey. And he, so he didn't, he didn't argue negligence, but he sure argued contributory negligence. Did you argue that there should have been punitives? I'm trying to think if the court, the court, yes, I did. I did argue that. I did argue that there should be punitives. I argued that overall I was seeking a 1983 judgment, but that I said there was also evidence to support a negligence holding, and if they found that, I would appreciate. What damages did you ask for? Did you, did you suggest? I'm testing my memory, Your Honor. I asked for a million dollars. I remember that I did that. And I asked for more than I got. And on the second issue, which now became Mr. Diesenhaus' first issue here, the rule. Okay, it's a practical matter. I have obtained a judgment. I look in the standard rudder guide. I see when I'm in chambers that that's the same set that Judge Phillips has. And I look at that. I consulted it. It's authoritative. It's almost like Witkin in California. There are two circuits that have followed it. The ninth hadn't expressed itself. And I followed the advice of the, of that Federal set, and thinking that if the Court has it in her chambers, that's good enough for me. And it's written by two Federal judges. And so that, and I think she saw it my way in that regard. The original deadline was told by defendants filing a motion pursuant to 50B and 59 on July 9th. Yes, Your Honor. Over and out. So unless the Court has some questions, those were my points. Well, let me see if I covered everything. Oh, no blocking. It's true that there was, we, Dr. Bailey couldn't, couldn't say who handcuffed him. However, this caller was Taberzio's and Colbert's. Colbert saw the conduct alleged. Taberzio was his, his action guy. And they were the arresting officers. They're responsible for the way the handcuffs were put on, if not under 1983, because that's, there isn't any respondeas superior aspect to that. But certainly as a negligence action, that was negligent. Everyone testified that that's not how you put on handcuffs. You put them on double locked, and they were not double locked. And if they'd been double locked, the fact that Dr. Bailey was kept for seven and a half hours in handcuffs wouldn't have injured him. He wouldn't have had to have a carpal tunnel operation. So that's, that's an oversight. That's negligence. Perhaps the officer that put it on made a mistake. But Colbert and Taberzio, who are making the arrest, they're responsible for checking that type of thing. They failed to do it. They failed to do their duty. And that's negligence. So there's lots of negligence that corresponds to the injury. And there was no miscarriage of justice in this case, Your Honor. Okay. Thank you. Thank you. Just a couple of quick comments. In front of this Court, Mr. Halsey has provided this Court perhaps with some other examples of why negligent conduct could be found. Unfortunately for him, none of them are found in the record. The handcuffing incident he talked about, the testimony from the deputies, Colbert and Taberzio, is that they weren't involved. There was testimony from two other deputies who indicated they did apply the handcuffs. Colbert and Taberzio had nothing to do with Dr. Bailey being kept in handcuffs for seven and a half hours because they did not transport him to the hospital. There was another deputy, Hernandez, who testified, who indicated he was the one who was responsible for the transport because Colbert and Taberzio were removed from the scene and went back to the station, which is contained in the record. I understand Judge Phillips's effective determination that there is some implied tolling provision in Rule 54. The problem is the rule is clear and it doesn't provide it. And when the 14-day requirement was added, it didn't add it either. There are ---- She held the ---- You know, what good is a motion for attorney's fees before you figure out whether the judgment is going to evaporate? How do you even know who the prevailing party is? Under your rule, you have to decide all these things prior to the time when you had a real, when you had a judgment that was final. The rule ---- How could you determine who the prevailing party was? The rule is written the way it is. How could you determine who the prevailing party was? You couldn't necessarily. You couldn't. But ---- So what sense does all of this make? The sense is, is that when the 14-day requirement was added, presumably the committee had your thought process in mind and still imposed a 14-day requirement. It says the motion has to be filed. It doesn't say all of the supporting documentation and everything else that might entail attorney's fees for having to deal with post-trial motions can't be filed at some later time. It simply says that motion has to be filed within 14 days of the judgment. And they just suspend it until we finally decide whether we have a judgment or not? Absolutely. Because when the rules provide exceptions, they make it very clear under what circumstances those exceptions are being applied. How did they find that Dr. Bailey was 30 percent negligent? I have no idea. Did you argue that? No. I have no idea how they came up with their ---- I assume they looked at it and they decided given what took place, each of them was essentially equally responsible for what occurred. And because my clients wore badges, they got 5 percent more than Dr. Bailey did. How they arrived at it is as much a mystery to me as how they arrived at their verdicts on damages. I love special verdicts. They're supposed to clarify and they rarely do. I agree, Your Honor. Thank you. Thank you. The case just argued is submitted. We'll hear the last case for argument, which is Wahl Data Incorporated v. L.A. County Sheriff's Department. May it please the Court. I'm Dennis Martin. I'm with Wilmore.
judges: Schroeder, Pregerson, Trott